UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN RE:  MILDRED M DUKES

MILDRED M DUKES,

       Appellant,

v.                                                Case No:   2:15-cv-420-FtM-99

SUNCOAST CREDIT UNION,

       Appellee.

## **ORDER**[1]

This matter comes before the Court on the Appellant, Mildred M. Dukes' Appeal of the Bankruptcy Court's Order Granting Suncoast Credit Union's (Suncoast) Motion for Summary Judgment, ruling that Suncoast's Claim against Dukes was not Discharged by the Bankruptcy Plan (Doc. #19) filed on November 25, 2015.  The Appellee, Suncoast filed its Response in Opposition (Doc. #23) on January 1, 2016.  Dukes filed a Reply Brief (Doc. #24) on February 24, 2015.  The Appeal is fully briefed and ripe for the Court's review.

## **BACKGROUND**

Suncoast held both the first and second mortgages on Dukes' homestead property. (the Property).  Dukes' bankruptcy schedules valued the Property at $150,000 and listed

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

$77,671 owed on the first mortgage (the "First Mortgage") and $79,000 on the second mortgage (the "Second Mortgage"). The Loans were to mature in 2022.  When Dukes filed for bankruptcy, she was current on the loans.

In the Chapter 13 Plan, Dukes proposed paying the mortgage payments on the loans for the Property directly to Suncoast without the payment going through the Bankruptcy Trustee.  The Loans were not referenced anywhere else in the Bankruptcy Plan.  The Bankruptcy Court approved Dukes' Plan and allowed her to continue to make the mortgage payments directly to Suncoast herself.

The Bankruptcy Court confirmed the Plan.  Dukes made thirty-six (36) payments, totaling $6,102.00, to the Chapter 13 trustee.  Dukes failed, however, to make all of the monthly mortgage payments on the Loans directly to Suncoast during the Plan period.  Upon Dukes' completion of her 36 payments to the Chapter 13 trustee, the Bankruptcy Court entered a Chapter 13 discharge.

On July 8, 2014, Suncoast filed an adversary Complaint moving the Bankruptcy Court to determine the dischargeability of the debt due to Suncoast on the second mortgage on Dukes' home.  Dukes filed a motion to dismiss which was granted by the Bankruptcy Court.  Suncoast filed an Amended Complaint on November 4, 2014.  Dukes filed a counterclaim asking the Bankruptcy Court to declare that the debt due to Suncoast was dischargeable under 11 U.S.C. § 1328.  Suncoast countered with a cross motion for summary judgment.  On June 18, 2015, the Bankruptcy Court ruled in favor of Suncoast holding that Dukes' debt to Suncoast was not discharged by the bankruptcy.  On June 19, 2016, the Bankruptcy Court *sua sponte* amended its order to correct a typographical

error.[2] Dukes now appeals the Bankruptcy Court's holding in favor of Suncoast that the loan on the Property was not discharged by the bankruptcy.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 158(a). The United States District Court functions as an appellate court in reviewing decisions of the United States Bankruptcy Court. *In re Fish*, 2013 WL 1104884, *2 (M.D. Fla. March 18, 2013) (citing *In re Colortex Indus., Inc.,* 19 F.3d 1371, 1374 (11th Cir.1994)). This Court reviews de novo the legal conclusions of the bankruptcy court. *In re Fish*, 2013 WL 1104884 at *2 (citing *In re JLJ, Inc.,* 988 F.2d 1112, 1116 (11th Cir.1993)).

The standard of review employed by this Court in reviewing the bankruptcy court's findings of fact is the clearly erroneous standard of review described in Federal Rule of Bankruptcy Procedure 8013: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *In re Fish,* 2013 WL 1104884 at *2 (citing *In re Thomas,* 883 F.2d 991, 994 (11th Cir.1989)). A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Crawford v. W. Elec. Co., Inc.,* 745 F.2d 1373, 1378 (11th Cir.1984) (citing *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S. Ct. 525, 92 L. Ed. 746 (1948)).

---

[2] The amended order issued by the Bankruptcy Court did not change the substance of the Bankruptcy Court's ruling and did concern the actual debt to Suncoast. Instead, the amendment merely corrected a clerical error.

## **DISCUSSION**

Dukes raises four grounds on appeal: (1) was the payment plan on the Suncoast debt provided for by the Plan pursuant to Bankruptcy Code 11 U.S.C. § 1328(a); (2) the method of disbursement did not affect the issue of discharge under 11 U.S.C. §1328(a); (3) 11 U.S.C. § 1322(b)(2) is not an element of a discharge under 11 U.S.C. §1328(a); and (4) if a creditor fails to file a proof of claim under 11 U.S.C. § 502 the claim is discharged under §1328(a).

### (1)   *Whether the Suncoast Debt was Provided for in the Plan*

The question here is whether the Plan "provided for" Suncoast's claims when the Plan's only reference to those claims was that Dukes would pay Suncoast directly. The Bankruptcy Court held that "a Chapter 13 plan that proposes to pay a secured creditor directly outside the plan leaves unaffected the rights of that creditor under §1322(b)(2) and does not provide for the debt owed to the creditor such that the debt is discharged under § 1328(a). Therefore, Debtor's [Dukes] Chapter 13 discharge did not include the discharge of her obligations to the mortgage holder [Suncoast]." *In Re Dukes*, 09-ap-569, (Doc. #39, p.2). The Bankruptcy Court continued that Dukes "specifically chose to make payments directly to Suncoast without modifying in any way her obligations to Suncoast, thereby leaving Suncoast's rights unaffected by the [P]lan under §1322(b)(2)." *Id.*

Dukes argues that the Suncoast debt was provided for in the Plan and therefore, the debt should be discharged. Dukes relies on *Rake v. Wade*, 508 U.S. 464, 473, 113 S. Ct. 2187, 124 L. Ed. 2d 424 (1993) for her position. Suncoast states the Bankruptcy Court correctly determined that the mere mention of a home mortgage lender in a Chapter

4

13 plan, without more, does not result in that lender's claim being subject to discharge as "provided for" under the Plan.

In *Rake v. Wade,* the Supreme Court discussed the meaning of the phrase "provided for by the plan" as used in § 1325(a)(5). The Court stated that "[t]he most natural reading of the phrase 'provid[e]d for by the plan' is to 'make a provision for' or 'stipulate to' something in a plan." *In re Park*, 532 B.R. 392, 396 (Bankr. M.D. Fla. 2015), *appeal dismissed as moot sub nom. In re: Park*, No. 2:15-CV-414-FTM-99, 2016 WL 397597 (M.D. Fla. Feb. 2, 2016). The *Rake* Court concluded that the plans in two separate Chapter 13 cases provided for the creditor's claims because the debtors had split the creditor's secured claim into two separate claims: one for the underlying debt and the other for the arrearages. *Id.* The *Rake* Court held that the debtors' plans "provided for" the arrearages because the plans "treated" the arrearages as a "distinct" claim to be paid during the life of the debtors' plans according to the payment schedules outlined in the plans. *Id.*

Two schools of thought have developed over the *Rake* Court's interpretation of the term "provided for." The first interpretation takes a broader view and is the one taken by the Court in *In Re Rodgers*, 494 B.R. 664 (Bankr E.D.N.C. 2013). Dukes argues for the broader interpretation as set forth in *Rodgers*. The *Rodgers* Court citing *Rake v. Wade* adopted the broad view of what it means for a claim to be "provided for" in a plan. The *Rogers* court held that the mere reference to a claim—even if that reference does nothing more than state that the claim will be paid directly outside the plan—constitutes "provided for by the plan" within the meaning of § 1328(a). *Id.* at 667. The *Rodgers* Court continued that unless one of the exceptions from discharge listed in § 1328(a) is present, a claim

"provided for by the plan," including a claim that is paid by the debtor directly to the creditor outside the plan, is subject to the debtor's discharge. *Id.*

However, other courts have reached the opposite conclusion. In *In re Huyck,* the court held that claims paid directly to creditors outside the plan are not provided for by the plan. 252 B.R. 509 (Bankr. D. Colo. 2000). In *Huyck,* the creditor's claim, not secured solely by the debtor's principal residence, was not subject to the antimodification provision of § 1322(b)(2); the debtors' plan proposed for the debtors to cure mortgage arrearages through their Chapter 13 plan and for the debtors to pay their regular monthly mortgage payments directly to the mortgage holder outside the plan. *Id.* at 514 The *Huyck* court held that while the claim for arrearages was provided for by the plan, the regular monthly principal and interest payments were not. *Id.* The court specifically found that one consequence of the debtors' choice to make regular payments to the secured creditor outside the plan was that the debt would not be discharged under § 1328(a). *Id.*

In *In re Hunt,* the debtor's plan proposed to make payments to the mortgage holder on his principal residence outside the plan. 2015 WL 128048 (Bankr. E.D.N.C. January 7, 2015). The court held that the mortgage claim would not be discharged upon the completion of payments under the plan. *Id.* The *Hunt* Court also points out that the discharge of a debtor's personal liability on a claim secured solely by the debtor's principal residence would be an impermissible modification of the loan in contravention of § 1322(b)(2). *Id.* at *4.

In *Bank of America, N.A. v. Dominguez (In re Dominguez)* the Chapter 13 plan specified that a mortgage claim was "not included" among the claims governed by the plan. 1:12-cv-24074-RSR (S.D. Fla. September 24, 2013). The *Dominguez* Court held that

the plan's mere reference to the mortgage claim, a reference which served only to clarify that the mortgage claim was *not* governed by the plan, did not effectuate the exact opposite result and render the claim one that *was* governed by the plan. *In re Park*, 532 B.R. at 397 (emphasis in original).  In other words, the court held that the plan's reference to a claim being paid directly outside the plan pursuant to contract terms did not support the conclusion that the plan had "provided for" the claim. *Id.*

In this instance, the Court finds the reasoning in *Huyck*, *Hunt*, and *Dominguez* to be the more persuasive.  The mere mention that Dukes would pay Suncoast's claim directly in the Plan, without more, did not result in Suncoast's claim being "provided for" under the Plan.  The Plan merely referenced that Dukes would pay Suncoast directly rather than pay into the Plan and have the Trustee distribute the mortgage payment to Suncoast.  Therefore, the Bankruptcy Court's decision finding that the mere mention that Dukes would pay the mortgage payment directly to Suncoast did not result in the Suncoast claim being "provided for" in the Plan was not erroneous.  Accordingly, the Bankruptcy Court did not err by granting Suncoast's motion for summary judgment.

### (2) Whether the Method of Disbursement Affected the Issue of Discharge Under §1328(a)

Dukes argues that the provisions made "under the plan" or "outside of the plan" no longer have meaning.  Instead, Dukes argues that all payments paid either by the trustee or the debtor are paid under the plan.  Dukes argues that it is irrelevant whether she made the payments or the trustee made the payments when determining that the debt was discharged.  Suncoast responds that § 1328(a), which provides a debtor with a discharge, must be read in tandem with § 1322(b).

Eleven U.S.C. § 1328(a) reads in pertinent part:

> (a) Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan, and in the case of a debtor who is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, after such debtor certifies that all amounts payable under such order or such statute that are due on or before the date of the certification (including amounts due before the petition was filed, but only to the extent provided for by the plan) have been paid, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt--
>
> (1) provided for under section 1322(b)(5);

11 U.S.C. § 1328(a).

Dukes' argument is premised upon the supposition that her payments were made under the Plan. Dukes' argument is unavailing because the Court has already found that Suncoast's debt was removed from the Plan by Dukes decision to directly pay Suncoast herself. Furthermore, even if the Court were to determine that a claim paid "outside the plan" is still "provided for" under the plan, when that claim is "long term debt" and the plan proposes for the debtor to maintain payments, the claim is provided for under § 1322(b)(5) and excepted from discharge under § 1328(a)(1). *In re Park*, 532 B.R. at 398. Therefore, even if the Court were to agree with Dukes' position, §1322(b)(5) would still govern and Suncoast's claim would not be discharged. As such, the decision of the Bankruptcy Court granting Suncoast's motion for summary judgment is affirmed.

### *(3) Whether § 1322(b)(2) is an Element of a Discharge Under §1328(a)*

The Bankruptcy Court found that Dukes "specifically chose to make payments directly to Suncoast without modifying in any way her obligations to Suncoast which left Suncoast's rights unaffected by the Plan under §1322(b)(2). *Suncoast Credit Union v. Dukes*, 9:14-ap-569 (Doc. #39, p.5). Dukes argues that § 1322(b)(2) does not affect a

8

discharge under §1328(a). Suncoast avers the Bankruptcy Court correctly held a debt that is left unaffected under § 1322(b)(2) is excepted from a Chapter 13 discharge. Section 1322(b)(2) permits a Chapter 13 debtor's plan to modify rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence. *Nobleman v. Am. Sav. Bank*, 508 U.S. 324, 113 S. Ct. 2106, 124 L. Ed. 2d 903 (1992).

Section 1328(a) is silent as to whether a debt left unaffected under § 1322(b)(2) is excepted from discharge. However, a Chapter 13 plan that does not modify the rights of a secured creditor under the plan leaves unaffected the rights of that creditor under § 1322(b)(2). *In Re Huyck*, 252 B.R. at 514; *See also In re Bateman*, 331 F.3d 821, 826 (11th Cir. 2003) (holding that § 1322(b)(2) specially prohibits any modification of a homestead mortgagee's rights in the Chapter 13 plan). If the rights of the holder of the claim are left unaffected, the claim is not discharged. *In Re Huyck*, 252 B.R. at 514. Thus, the Bankruptcy Court did not err by finding that Dukes debt to Suncoast was not discharged by the bankruptcy.

**(4) *Whether the Claim is Discharged under § 1328(a) if the Creditor Fails to File a Proof of Claim Pursuant to § 502***

Dukes avers Suncoast failed to file a proof of claim pursuant to 11 U.S.C. § 502 on the first mortgage. Dukes contends the claim should be discharged because the debtor must file a proof of claim pursuant to § 502 or forfeit its *in personam* right to pursue the debt. Dukes acknowledges the debt may still be pursued *in rem*. As a consequence of Suncoast's failure to file a proof of claim, Dukes argues that Suncoast is barred from pursuing any deficiency—*in personam*—on the debt that resulted from the foreclosure of her residential property.

Suncoast argues that since Dukes did not raise the issue pursuant to § 502 in the Bankruptcy Court, she may not raise it on appeal. Dukes acknowledges that the issue regarding Suncoast's failure to file proof of claim under § 502 was not raised with the Bankruptcy Court. However, Dukes argues that the failure to file a proof of claim pursuant to § 502 is a matter of law and as such this Court may address the issue even if it was not raised in the Bankruptcy Court below.

An appellate court may consider issues for the first time on appeal in five exceptional circumstances. *In re Mazon*, 395 B.R. 742, 747 (M.D. Fla. 2008) (citing *Dean Witter Reynolds, Inc. v. Fernandez,* 741 F.2d 355, 360–361 (11th Cir.1984)). However, as a general rule, an issue "not raised in the [bankruptcy] court and raised for the first time in an appeal will not be considered by the [appeals] court." *Blue Martini Kendall, LLC v. Miami Dade Cty. Florida*, 816 F.3d 1343, 1349 (11th Cir. 2016) (citing *Access Now, Inc. v. Sw. Airlines Co.,* 385 F.3d 1324, 1331 (11th Cir.2004) (internal quotations omitted) (collecting cases); *see also Dean Witter,* 741 F.2d at 360 (finding "[e]xcept for questions concerning the power of the court to order relief, an appellate court generally will not consider a legal issue or theory unless it was presented to the trial court."). This general rule preserves judicial resources and hews to the "essential nature, purpose, and competence of an appellate court." *Blue Martini*, 816 F.3d at 1349 (citing *Access Now,* 385 F.3d at 1331). "This rule, however, is not jurisdictional and may be waived by this court in certain exceptional circumstances." *Blue Martini*, 816 F.3d at 1349. The question of whether to hear a claim not raised in the [bankruptcy] court is ultimately one that falls within the sound discretion of the Court. *Id.*

The Eleventh Circuit identified five situations in which it may be appropriate to deviate from the standard rule of practice:

> First, an appellate court will consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice. Second, the rule may be relaxed where the appellant raises an objection to an order which he had no opportunity to raise at the district court level. Third, the rule does not bar consideration by the appellate court in the first instance where the interest of substantial justice is at stake. Fourth, a federal appellate court is justified in resolving an issue not passed on below where the proper resolution is beyond any doubt. Finally, it may be appropriate to consider an issue first raised on appeal if that issue presents significant questions of general impact or of great public concern.

*In re Mazon*, 395 B.R. at 747 *(citing Dean Witter,* 741 F.2d at 360–61 (internal quotations omitted)).

Dukes asked the Court to consider the issue because it is a pure matter of law. The Court agrees with Dukes' position that the requirements of the statute are a pure question of law. However, in considering the factors set forth by the Eleventh Circuit in *Dean Witter*, the Court does not find that a miscarriage of justice would exist if it declines to consider Dukes' § 502 appeal. Dukes willingly entered into the mortgage agreement with Suncoast and understood that the debt would have to be paid back. Thus, requiring Dukes to pay back the debt would not be a miscarriage of justice. Dukes could have raised the § 502 issue at the summary judgment stage in the Bankruptcy Court, but failed to do so. And, there is not a substantial interest of justice at stake because Dukes entered into the debt knowing it would have to be paid back.

Further, it appears that Suncoast would most likely be successful on its claim even if the Court did determine that it should hear the § 502 issue. Suncoast cites to *In Re Bateman,* 331 F.3d 821, 834 n. 12 (11th Cir. 2003) which held that the creditor did not

lose its right to recover any deficiency it may have had from the estate or from the debtors because the lien would pass through the bankruptcy unaffected pursuant to the anti-modification provision found in 11 U.S.C. § 1322(b)(2).  Thus, according to the ruling in *Bateman*, § 1322(b) would protect Suncoast's interest to pursue the deficiency claim *in personam*.  Finally, this case does not raise any issues that would present significant questions of general impact or of great public concern.  Thus, there are no exceptional circumstances that would cause the Court to deviate from the standard practice and hear Dukes § 502 argument on appeal.

## CONCLUSION

After a review of the bankruptcy record and the Parties' memoranda of law, the Court affirms the decision of the Bankruptcy Court in granting Suncoast's Motion for summary judgment ruling that Suncoast's claim was not discharged by the Bankruptcy Plan.

Accordingly, it is now **ORDERED:**

The Decision of the United States Bankruptcy Court Granting Suncoast's Motion for Summary Judgment, ruling that the Suncoast's Claim was not discharged by the Bankruptcy Plan is hereby **AFFIRMED**.  The Clerk shall enter judgment accordingly, transmit a copy of this Order and the Judgment to the Clerk of the Bankruptcy Court, terminate the appeal, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida this 27th day of September, 2016.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record